**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **NEUROPATHY SPECIALTIES USA, LLC**, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NORTH AMERICAN BANCARD, LLC d/b/a RAPID CAPITAL FUNDING MERCHANT SERVICES,**<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Neuropathy Specialties USA, LLC ("NSU" or "Plaintiff") brings this Class Action Complaint against Defendant North American Bancard, LLC ("NAB") d/b/a Rapid Capital Funding Merchant Services, to stop Defendant's practice of sending unsolicited fax advertisements, even after recipients request that the faxes stop, and to obtain redress for all persons injured by their conduct. Plaintiff, for its Class Action Complaint, alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

**PARTIES**

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Nevada. Plaintiff's principal place of business is in Reno, Nevada.

2. Defendant NAB is a limited liability company organized and existing under the laws of the State of Michigan. Its principal place of business is located at 250 Stephenson Hwy, Troy, Michigan 48083.

1

## JURISDICTION & VENUE

3.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq.* ("TCPA"), a federal statute.

4.  The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant regularly conducts business in this District, is headquartered in this District, and a substantial part of the events giving rise to the claims asserted herein emanated from this District.

## COMMON ALLEGATIONS OF FACT

5.  This case challenges Defendant's practice of sending unsolicited fax advertisements.

6.  Defendant is a payment technology company which, as part of its business, does business as Rapid Capital.[1]

7.  The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227 ("JFPA" or the "Act"), and the regulations promulgated under the Act, prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express consent, invitation, and permission. The JFPA provides a private right of action and provides statutory damages of $500 per violation.

---

[1] Rapid Capital's BBB website—which includes the facsimile number that appears on the relevant faxes—re-routes to NAB's website once the "Visit Website" link is clicked. https://www.bbb.org/us/fl/north-miami/profile/credit-card-merchant-services/rapid-capital-funding-0633-90412399 (last visited September 5, 2023).

Additionally, when one visits the Michigan Secretary of State's website, searches for "Rapid Capital," and clicks on "Rapid Capital Funding Merchant Service," one is re-routed to a page for North American Bancard LLC. In short, NAB does business as Rapid Capital and is responsibility for the faxes at issue in this case.

2

8.      Upon information and belief, Defendant has sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the JFPA. See "Rapid Capital Faxes," a true and correct copy of which is attached hereto as Exhibit A. The Rapid Capital Faxes promote the services and goods of Defendant.

9.      Plaintiff is informed and believes, and upon such information and belief avers, that Defendant has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the JFPA.

10.     Unsolicited faxes cause concrete and particularized legal harm and damages to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's time that would have been spent on something else. A junk fax also invades the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

11.     On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the JFPA.

12.     Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (ii) an award of

statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

## FACTS SPECIFIC TO PLAINTIFF

13. Defendant transmitted by telephone facsimile machine several unsolicited facsimiles to Plaintiff. *See* Exhibit A.

14. The facsimiles at issue was transmitted to Plaintiff throughout 2023. Plaintiff has received at least ten (10) unsolicited faxes from Defendant, as recently as August 29, 2023.

15. Defendant knew about, profited by, and received the benefits of marketing of its products and is a responsible party under the JFPA.

16. Defendant created or made the Rapid Capital Faxes, which advertise Defendant's goods or products that Defendant intended to and did in fact distribute to Plaintiff and the other members of the Class.

17. The Rapid Capital Faxes are part of Defendant's work or operations to market Defendant's goods or services, which are performed by Defendant and/or on behalf of Defendant. Therefore, the Rapid Capital Faxes constitute material furnished in connection with Defendant's work or operations.

18. Plaintiff had not impliedly or expressly invited or given permission to Defendant to send the fax at issue and had no prior relationship with Defendant.

19. In fact, Plaintiff has attempted to opt-out of receiving these faxes on many occasions. It has sent outbound faxes to Defendant at the fax number listed on the Rapid Capital Faxes requesting to be removed from Defendant's list, yet the faxes continue to be sent by Defendant.

20. On information and belief, Defendant faxed the same unsolicited facsimiles to

4

Plaintiff and more than 40 other recipients without first receiving the recipients' express permission or invitation.

21. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

22. Defendant's facsimile did not display a proper opt-out notice as required by 47 C.F.R. 64.1200 because it did not apprise recipients of their legal rights to opt out, the consequences of a failure to properly respond, that all numbers could be opted out, and other required notifications.

## CLASS ACTION ALLEGATIONS

23. In accordance with F. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), Plaintiff brings this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons in the United States who (1) on or after four years prior to the filing of the initial complaint in this action, (2) were sent, by Defendant or on Defendant's behalf, (3) a telephone facsimile message substantially similar to those attached as Exhibit A, (4) from whom Defendant claims it obtained prior express permission or invitation to send faxes in the same manner as Defendant claims it obtained prior express permission or invitation to send a fax the Plaintiff.

24. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definition following appropriate

discovery.

25. <u>Class Size (F. R. Civ. P. 23(a)(1))</u>: Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is in the thousands.

26. <u>Commonality (F. R. Civ. P. 23 (a) (2))</u>: Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

    a.    Whether the Defendant sent unsolicited fax advertisements;

    b.    Whether the Defendant's faxes advertised the commercial availability of property, goods, or services;

    c.    Whether the manner and method the Defendant used to compile or obtain the list of fax numbers to which it sent the Rapid Capital Faxes and other unsolicited faxed advertisements procured prior express consent from the recipients to send the faxes;

    d.    Whether the Defendant faxed advertisements without first obtaining the recipient's prior permission or invitation;

    e.    Whether the Defendant sent the faxed advertisements knowingly;

    f.    Whether the Defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

    g.    Whether the faxes contained an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

6

      h.      Whether the Defendant should be enjoined from faxing advertisements in the future;

      i.      Whether the Plaintiff and the other members of the Class are entitled to statutory damages; and

      j.      Whether the Court should award treble damages.

27.    <u>Typicality (F. R. Civ. P. 23 (a) (3))</u>: The Plaintiff's claims are typical of the claims of all class members. The Plaintiff received the Fax sent by or on behalf of the Defendant advertising goods and services of the Defendant during the Class Period. The Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. The Defendant has acted the same or in a similar manner with respect to the Plaintiff and all the class members.

28.    <u>Fair and Adequate Representation (F. R. Civ. P. 23 (a) (4))</u>: The Plaintiff will fairly and adequately represent and protect the interests of the Class. It is interested in this matter, has no conflicts and has retained experienced class counsel to represent the Class.

29.    <u>Common Conduct (F. R. Civ. P. 23 (b) (2))</u>: Class certification is appropriate because the Defendant has acted and refused to act in the same or similar manner with respect to all class members thereby making injunctive and corresponding declaratory relief appropriate. The Plaintiff requests such relief as authorized and appropriate by 47 U.S.C. §227.

30.    <u>Predominance, Superiority, and Manageability (F. R. Civ. P. 23 (b) (3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because: (a) Proof of the claims of the Plaintiff will also prove the claims of the Class without the need for separate or individualized proceedings; (b) Evidence regarding

7

defenses or any exceptions to liability that the Defendant may assert and prove will come from the Defendant's records and will not require individualized or separate inquiries or proceedings; (c) the Defendant has acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members; (d) the amount likely to be recovered by individual class members does not support individual litigation.

31. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one (1) proceeding based upon common proofs; and this case is manageable as a class action in that: the Defendant identified persons or entities to receive the fax transmission and it is believed that the Defendant's computer and business records will enable the Plaintiff to readily identify class members and establish liability and damages; liability and damages can be established for the Plaintiff and the Class with the same common proofs; statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner; a class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense; a class action will contribute to uniformity of decisions concerning the Defendant's practices; and as a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

**FIRST CAUSE OF ACTION**
**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227,** *et seq*

32. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

33. The JFPA makes unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement …" 47 U.S.C. § 227(b)(1)(C).

8

34. The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

35. The faxes sent by Defendant advertised Defendant's products and services, were commercial in nature, and are advertisements under the TCPA.

36. Plaintiff and the other class members never gave prior express consent to receive the faxes.

37. **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in §(b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements").

    1. a statement that the recipient may opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

    2. a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

    3. a statement advising the recipient that he or she may opt-out with respect to all of his or its facsimile telephone numbers and not

9

just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or its fax machines;

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of fax machines giving them the right, and means, to stop unwanted faxed advertisements. As a result of such requirements, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxed advertisement gave "prior express permission or invitation" to receive the faxes nor can the sender claim the exemption from liability contained in § (b)(C)(1) of the Act.

38.     **The Fax.** Defendant sent the Rapid Capital Faxes via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of Plaintiff and members of the Plaintiff Class. The Rapid Capital Faxes constituted an advertisement under the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Rapid Capital Faxes because the faxes fail to apprise recipients of their legal

10

right to opt out, fail to identify the consequences of the sender's failure to honor an opt out request within 30 days, fail to provide a cost free means of opting out and fail to notify individuals that they may opt out of having faxes sent to any of their fax numbers. The Rapid Capital Faxes was transmitted to persons or entities without their prior express permission or invitation and/or Defendant is precluded from asserting any prior express permission or invitation based on any established business relationship because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the JFPA and the regulations promulgated thereunder, by sending the Curis Fax via facsimile transmission to Plaintiff and members of the Class.

39. **Defendant's Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

40. The TCPA/JFPA provides a private right of action to bring this action on behalf of Plaintiff and the Plaintiff Class to redress Defendant's violations of the Act as well as for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides for injunctive relief where appropriate. *Id.*

41. The Defendant knew or should have known that (a) the Plaintiff and the other class members had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's goods or services; (b) the faxes constituted advertisements; and (c) the faxes did not apprise recipients of their legal rights to opt out.

42. The Defendant's actions caused damages to the Plaintiff and the other class members. Receiving the Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendant's faxes. Moreover, the Defendant's faxes used the Plaintiff's fax machine. The Defendant's faxes cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing and routing the Defendant's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's business activities. The Defendant's faxes unlawfully invaded the Plaintiff's and other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of Defendant's advertisements occurred outside of Defendant's premises.

43. Plaintiff demands on its own behalf and on behalf of the class members $500 per fax, to be trebled if willfulness is found. Plaintiff also requests injunctive and corresponding declaratory relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of itself and the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class and appointing its attorneys' as Class Counsel;

2. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater to be paid into a common fund for the benefit of the Class Members;

3. An order enjoining Defendant from further violations, and otherwise protecting the interests of the Class;

4. An order declaring that Defendant's faxes are advertisements, that Defendant sent the faxes without obtaining prior express permission or invitation to do so, and that the faxes fail to contain required opt out language;

5. An award of pre- and post-judgment interest;

6. An award of reasonable attorneys' fees and costs to be paid from the common fund; and

7. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: September 5, 2023

,

**NEUROPATHY SPECIALTIES USA, LLC**, Individually and on behalf of all others similarly situated,

By: /s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
720-213-0676
*Counsel for Plaintiff and the Alleged Class*